UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DANIEL SEVIN, PETER DELVECCHIO,          :      Civil Action No.
AND THE ASSOCIATION OF COMMUTER          :
RAIL EMPLOYEES, INDIVIDUALLY AND         :
AS REPRESENTATIVES OF A CLASS OF         :
SIMILARLY SITUATED PERSONS,              :
                                         :
                    Plaintiffs,          :      **CLASS ACTION COMPLAINT**
                                         :
         -against-                       :
                                         :
METROPOLITAN TRANSPORTATION              :
AUTHORITY,                               :
                                         :
                    Defendant.           :
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs Daniel Sevin, Peter DelVecchio, and the Association of Commuter Rail

Employees ("ACRE") bring these claims on behalf of themselves and as representatives of other

similarly situated members of ACRE (which, as described below, represents conductors,

engineers, rail traffic controllers, and other operating craft employees of the Metropolitan

Transportation Authority and Metro-North Railroad).

1.      Plaintiffs file this Complaint against the Metropolitan Transportation Authority

(the "MTA") seeking to prevent MTA from canceling the insurance coverage of Plaintiff Sevin

and the Class of ACRE members during the lengthy delays that have become all too common

when ACRE members submit disability claims through the MTA. Recently, the MTA has

significantly increased the time it takes to review disability applications and it has often taken

years for the MTA and its Medical Board to issue final determinations to ACRE members on

their disability claims.  As a result of the lengthy delays, the members' MTA-provided family

and individual insurance coverage has lapsed, leaving ACRE members and their families uninsured and financially devastated.

2.      To make the situation worse, the MTA has ignored or refused requests to extend the participant's insurance coverage while the MTA and its Medical Board review the disability applications, leaving the employees without the valuable insurance, often unable to obtain comparable insurance, and frequently facing financial ruin.

3.      Plaintiffs seek an injunction requiring the MTA to continue insurance coverage for Plaintiffs and other ACRE members who have submitted timely disability claims and to not cancel that coverage for family members or individuals before the ACRE member's disability claims have been finally resolved. To the extent that the participant's family or individual coverage has lapsed before the MTA has finally determined the participant's disability application, Plaintiffs seek an injunction requiring the MTA to reinstate the coverage for Plaintiffs and the other members of the Class (defined below). Alternatively, Plaintiffs seek monetary damages from the MTA for the damage caused to Plaintiffs and other ACRE members as a result of the conduct by the MTA alleged in this Complaint, including the costs of obtaining comparable replacement insurance coverage.

4.      Additionally, Plaintiffs seek an injunction requiring the MTA to comply with the Plan's requirement (alleged below) that the MTA's Medical Board responsible for reviewing disability applications shall contain three physicians (including one who is either the employee's physician or is selected by the employee's bargaining representative). During the past few years, including during the time when Plaintiffs' disability applications have been pending, the MTA's Medical Board has operated in violation of that requirement by only including two physicians, both selected by the MTA. The MTA has refused requests by ACRE on behalf of Plaintiffs and

other Class members that the Medical Board include a third physician appointed by Plaintiffs or Plaintiffs' representatives as required by the MTA's own Plan documents. This refusal and this violation of the Plan's provisions establishing the Medical Board has harmed Plaintiffs and other members of the Class.

5.    Plaintiffs bring these class claims against Defendant under 29 U.S.C. § 1132(a), also known as ERISA § 502(a), and under state law, to recover benefits wrongfully denied, to enjoin Defendant from utilizing its illegal policies and practices going forward, and to obtain other appropriate equitable relief to redress Defendant's violations.

6.    Because they have been, and are likely to continue to be, harmed by Defendant's misconduct in this regard, Plaintiffs bring this Complaint against Defendant on behalf of themselves and all others similarly situated, pursuant to the private rights of action contained in ERISA.

## PARTIES

### Plaintiff Daniel Sevin

7.    Plaintiff Daniel Sevin is 53 years old.

8.    At all relevant times, Plaintiff Sevin lived at 9 Florida Avenue, Yonkers, New York.

9.    Plaintiff Sevin was a conductor for the MTA for more than 20 years before he was injured in 2015.

10.    In 2015, as a result of becoming ill, Plaintiff Sevin became Occupationally Disabled and unable to perform his job at the MTA.

11.    Plaintiff Sevin applied to the MTA for disability on April 7, 2015 through the MTA's Disability Benefits Plan.

3

12.    Around the same time as he submitted his disability claim to the MTA, Mr. Sevin submitted a disability application to the US Railroad Retirement Board ("US RRB") and was approved for Occupational Disability. In 2017, while Mr. Sevin's application to the MTA was still pending, the US RRB upgraded his disability designation to "total and permanent" and he will be eligible for early Medicare coverage as of March 1, 2018.

13.    Contrary to the efficient way that the US RRB reviewed and approved Mr. Sevin's application for disability benefits, the MTA, through its Medical Board, took one year and eight months to review the application and waited until late December, 2016 to deny the application, only days before Mr. Sevin's family insurance coverage expired on December 31, 2016. As a result of the MTA's significant and unexplained delay reviewing Mr. Sevin's disability application, his family coverage lapsed on December 31, 2016, leaving his wife without the previously provided insurance.

14.    The MTA improperly based its denial of Mr. Sevin's application on a recommendation by a Medical Board that, contrary to the Defined Benefit Plan's requirement, included only two (not three) physicians and did not include Mr. Sevin's physician or a physician selected by the Collective Bargaining Representatives of Participants who are entitled to participate in the Defined Benefit Plan.

15.    After receiving the MTA's determination, Mr. Sevin requested that the Medical Board reconsider his disability application but now, one year later, the Board still has not decided that request.

16.    As a result of the lengthy delays by the MTA with respect to Mr. Sevin's disability application, the MTA caused Mr. Sevin's MTA-provided family insurance coverage to lapse on December 31, 2016 and would not extend it. Then, as 2017 progressed without the

MTA resolving Mr. Sevin's disability application, the MTA refused to extend Mr. Sevin's insurance coverage despite requests on November 13, 2017 and again on December 12, 2017. The MTA did not respond to those repeated written requests and has not extended Mr. Sevin's insurance coverage.

17.     As a result, having already lost his family coverage during the prolonged MTA review process, Mr. Sevin will now lose his individual insurance coverage on December 31, 2017 unless the MTA favorably decides his application, extends the coverage before then, or this Court orders the MTA to extend the coverage.

18.     It would cost Mr. Sevin approximately $2,200 per month to obtain replacement family coverage and approximately $900 per month to obtain replacement individual coverage.

19.     Because of his injuries and disability and his inability to work, Mr. Sevin cannot afford to pay for that coverage.

20.     Under the MTA's Plan, if Mr. Sevin were working for the MTA or declared disabled, the MTA would be obligated to continue his insurance coverage until he reaches age 65 and to provide insurance coverage for his spouse until she is 65 years old.

21.     Mr. Sevin has been damaged by the MTA's conduct as alleged herein.

22.     The MTA's conduct has irreparably injured Mr. Sevin.

**Plaintiff Peter DelVecchio**

23.     Plaintiff Peter DelVecchio worked for more than 20 years as a conductor for the MTA. He is 46 years old.

24.     At all relevant times during his employment, Mr. DelVecchio lived at 29 Hill Street, Branford, Connecticut and he now lives at 487 Highland Road, Bridgton, Maine.

25.     Mr. DelVecchio was injured and became disabled in 2014.

5

26.     Following his injury, Mr. DelVecchio applied to the US RRB and was approved for Occupational Disability in April 2015.

27.     Separately Mr. DelVecchio applied to the MTA for disability on April 16, 2015 through the MTA's Disability Benefits Plan.

28.     Contrary to the way that the US RRB reviewed and approved Mr. DelVecchio's application for disability benefits, the MTA, through its Medical Board, has taken since April 16, 2015 (more than two-and-a–half years) to review Mr. DelVecchio's application.

29.     As a result of the MTA's significant and unexplained delay reviewing Mr. DelVecchio's disability application, the MTA caused Mr. DelVecchio's family coverage to lapse on December 31, 2015, leaving his wife and three children (ages 14, 16 and 19) without the previously provided MTA insurance.

30.     The MTA has refused requests made on behalf of Mr. DelVecchio to extend Mr. DelVecchio's insurance coverage while the MTA considers his disability application.

31.     Instead, as a result of the MTA's significant and unexplained delay reviewing Mr. DelVecchio's disability application, the MTA caused Mr. DelVecchio's individual insurance coverage to lapse on December 31, 2016.

32.     Now, more than two years and eight months since Mr. DelVecchio submitted his disability application, the MTA has not yet determined his application.

33.     Upon information and belief, the MTA and its Medical Board are improperly reviewing DelVecchio's disability application using a Medical Board that, contrary to the Defined Benefit Plan's requirement, includes only two (not three) physicians and does not include Mr. DelVecchio's physician or a physician selected by the Collective Bargaining Representatives of Participants who are entitled to participate in the Defined Benefit Plan.

34.     It would cost Mr. DelVecchio approximately $2,200 per month to obtain replacement family coverage and approximately $900 per month to obtain replacement individual coverage.

35.     Because of his disability and his inability to work, Mr. DelVecchio cannot afford to pay for that replacement coverage.

36.     Under the MTA's Plan, if Mr. DelVecchio were working for the MTA or declared disabled, the MTA would be obligated to continue his insurance coverage until he reaches age 65 and to provide insurance coverage for his spouse until she is 65 and for his dependent children until they are age 26.

37.     Mr. DelVecchio has been damaged by the MTA's conduct as alleged herein.

38.     The MTA's conduct has irreparably injured Mr. DelVecchio.

**Plaintiff Association of Commuter Rail Employees**

39.     Plaintiff Association of Commuter Rail Employees ("ACRE") is a union created in January 2000 to represent the operating craft employees at MTA Metro-North railroad.

40.     It is the only independent union in America that represents Conductors, Engineers, Power Directors, Rail Traffic Controllers, Signalmen, Yardmasters, and Stationmasters under the Railway Labor Act. It has been instrumental in building the premier commuter railroad in America. ACRE has more than 1,700 members.

41.     ACRE's headquarters are located at 420 Lexington Avenue, Suite 215, New York, New York.

42.     At all relevant times, Plaintiffs Sevin and DelVecchio have been members of ACRE.

**Defendant Metropolitan Transportation Authority**

43.     Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation responsible for public transportation in New York, serving 12 counties in New York along with two counties in Connecticut. Its transportation system carries more than 11 passengers on an average weekday system-wide and more than 800,000 vehicles on its seven toll bridges and two tunnels every weekday.

44.     The MTA is the largest public transit authority in the United States.

45.     Defendant MTA has its headquarters at 2 Broadway, New York, New York.  .

46.     Defendant MTA is the sponsor, administrator and fiduciary of the Defined Benefit Retirement Program for Represented Employees of the Commuter Rails (the "Plan") and as such, exercises discretionary authority with respect to managing and administering the Plan. Moreover, MTA itself and through its Board of Managers and its Medical Board, exercises discretionary authority with respect to determining disability claims and insurance coverage issues for its employees pursuant to that Plan.

47.     Upon information and belief, at all relevant times, Defendant MTA acted through its officers, directors and employees, including the Board of Managers and the Medical Board, who were appointed by the MTA to perform Plan-related functions and did so in the course and scope of their services for the MTA.

48.     At all relevant times Defendant MTA had effective control over the activities of its officers, directors, employees, and affiliates, including the Board of Managers and the Medical Board. Accordingly, the actions of the MTA's officers, directors, employees and affiliates, including the Board of Managers and the Medical Board, are imputed to Defendant MTA under the doctrine of *respondeat superior*, and Defendant MTA is liable for these actions.

## JURISDICTION AND VENUE

49.     Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Personal jurisdiction exists over Defendant, and this District is the proper venue, because Defendant conducts significant operations in this District, Defendant regularly communicates with its employees who reside in this District, and Defendant is headquartered in this District.

50.     This Court has personal jurisdiction over Defendant pursuant to and consistent with the Constitutional requirements of Due Process in that Defendant, acting through its agents or apparent agents, transacts business within the state, and makes contracts within the state, including the contracts and Plan documents that are the subject of the claims in this action.

51.     Requiring Defendant to litigate these claims in this District does not offend traditional notions of fair play and substantial justice.

52.     Plaintiffs' claims arise in part from conduct Defendant purposefully directed to New York. On information and belief, Defendant's decisions about disability claims and its decisions about insurance coverage are all made in this District.

## ADDITIONAL FACTUAL ALLEGATIONS

53.     As part of its compensation package for employees, the MTA provides health and welfare benefits, including medical, dental and vision plans, life insurance and disability benefits, flexible spending accounts, and retirement benefits.

54.     The MTA provides and pays for the health and welfare plans, including medical insurance.

55.    If a worker is injured and becomes disabled, those benefits (including the MTA-provided health insurance) continue for a set amount of time while the MTA (through its Board of Managers and Medical Board) considers the employee's disability application.

56.    For instance, the MTA's contract with Plaintiffs and the other members of the Class provides that if an employee becomes disabled and takes a "Medical Leave of Absence", the MTA-provided family insurance coverage for that employee continues until the end of the following year. The employee's individual coverage would continue until the end of the year after that. *See* Exhibit 2, MTA Summary of Benefits – Agreement Employees, at page 9 of 15, section "Medical Leave of Absence".

57.    As an example, if a disabled employee's last day of work was October 21, 2016, and the disabled employee submitted a disability application and took a Medical Leave of Absence, the MTA would continue to provide insurance coverage for the employee and his dependents until December 31, 2017. On that date, the family coverage would lapse but the MTA will continue to provide individual insurance coverage for the employee until the end of the next calendar year (until December 31, 2018).

58.    The MTA pays all of the costs of the insurance, which are substantial.

59.    When an MTA employee, such as Plaintiff Sevin and Plaintiff DelVecchio, is injured and becomes disabled, the employee submits a disability application to the MTA that is then considered and ruled upon by the MTA's Board of Managers with advice from the MTA Medical Board, a process that is defined and described in contractual documents between the MTA and its employees, such as the "Defined Benefit Retirement Program For Represented Employees of the Commuter Rails" (Exhibit 1) and the "Summary of Benefits" (Exhibit 2).

60.     Pursuant to the MTA's "Defined Benefit Retirement Program For Represented Employees of the Commuter Rails", a Participant/employee is eligible to receive a Disability Retirement Allowance, including insurance coverage, "if the Board of Managers, based on a proper application … makes a determination of disability ….". (exhibit 1, DBRP, page 19, section 12.3.04 (a)).

61.     When an employee submits a disability application, the Medical Board makes a recommendation to the MTA's Board of Managers about whether or not the applicant is disabled.

62.     Pursuant to the Plan, the Medical Board is required to have three members who are physicians. One physician is selected by the MTA as the Employer (DBRP, section 12.1.09 (a)), the second is selected by an independent occupational health care provider retained by the MTA (DBRP, section 12.1.09 (c)), and the third is either the employee's personal physician or a physician selected by the employee's Collective Bargaining Representatives (DBRP, section 12.1.09 (b)).

63.     The Plan, at page 20, section 12.3.04(c)(ii), sets forth the requirements for considering a Participant disabled, including that the Participant is physically or mentally incapacitated when he stops working for the MTA, the disability is anticipated to be permanent, and the Participant is incapable of performing the duties normally, ordinarily and reasonably expected of his or her position. (DBRP, section 12.3.04 (c)(ii)).

64.     When the participant files a disability application, the Medical Board gives the participant a medical examination and if the Medical Board finds that the participant is incapacitated, the MTA will retire that person, effective as of the date approved by the Board of Managers.

11

65.     Upon that determination, among other things, the employee receives Disability Retirement Benefits, including health insurance paid for by the MTA. Those insurance benefits continue until the employee turns 65 and also cover the employee's spouse until the spouse turns 65, and cover the employee's dependent children until age 26.

66.     When Plaintiffs Sevin and DelVecchio applied to the MTA for disability benefits because of an illness or injury, they each took a "Medical Leave of Absence" from their jobs.

67.     The MTA's "Summary of Benefits" for "Agreement Employees" (including Plaintiffs Sevin and DelVecchio and the members of ACRE) provides that when an employee takes a Medical Leave of Absence, the employee's family coverage continues until the end of the following year and his own individual coverage continues until the end of the year after that. Exhibit 2, Summary of Benefits, page 9 of 15 "Medical Leave of Absence".

68.     The one year extension of insurance benefits should provide enough time to allow the MTA's Medical Board to determine whether the employee was disabled and to make its recommendation to the Board of Managers so that the MTA could retire the employee and the employee could begin receiving his or her Disability Retirement Benefits, including continued family and individual insurance coverage. The determinations would be completed before the employee's family coverage or the individual coverage lapsed or, if the review was expected to take longer, the MTA frequently would extend the insurance coverage during that extended review.

69.     Recently, however, the MTA has delayed the review time on disability applications for so long that injured or sick employees who submit disability applications are losing their family coverage and even their individual coverage because of the lengthy and unnecessary delays. The review process is taking years to complete. Often the MTA, through its

Medical Board, takes so long to decide the claims that the employees lose their medical insurance coverage. Moreover, the MTA has recently refused to extend the insurance coverage while the Medical Board processes the claim, leaving the employees without the valuable insurance, unable to obtain comparable insurance, and facing financial ruin.

70.    For example, although Plaintiff Sevin applied for disability more than two-and-a-half years ago, on April 7, 2015, his application is still under review by the MTA and during this time the MTA stopped his family coverage on December 31, 2016 and has refused repeated requests to continue Mr. Sevin's individual coverage beyond December 31, 2017. Losing his family coverage has been devastating for Mr. Sevin and his family and the expected loss of his individual coverage on December 31, 2017 will financially ruin him and his family, leaving him unable to afford replacement insurance coverage.

71.    Similarly, Plaintiff DelVecchio applied to the MTA for disability on April 16, 2015 and the MTA's review process took so long that Mr. DelVecchio's family coverage lapsed, leaving his wife and three children without the previously MTA-provided insurance. As the review process continued, the MTA refused requests made on behalf of Mr. DelVecchio to extend his individual coverage while the MTA considered his disability application. Instead, as a result of the MTA's significant and unexplained delay reviewing Mr. DelVecchio's disability application, the MTA caused Mr. DelVecchio's individual insurance coverage to lapse on December 31, 2016.

72.    Now, more than two years and eight months since Mr. DelVecchio submitted his disability application, the MTA has not yet determined his application.

73.    Similar delays have injured other ACRE members.

74.     Plaintiffs seek an injunction requiring the MTA to continue or reinstate insurance coverage for Plaintiffs Sevin and DelVecchio and other ACRE members (and their families) who have submitted timely disability claims and to not cancel that coverage before the employee's disability claims have been finally resolved by the MTA.

75.     Alternatively, Plaintiffs seek monetary damages from the MTA for the damage caused by the MTA to Plaintiffs and other ACRE members, including the costs of obtaining comparable replacement insurance, as a result of the conduct complained of in this Complaint.

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action as a class action on behalf of:

> All persons who submitted a disability application to the MTA at any time between December 1, 2011 and the present and had their MTA-provided insurance lapse during that review process or had their disability petition denied after a review by the MTA's Medical Board containing only two physicians (the "Class Period" and the "Proposed Class").

77.     The Proposed Class members are so numerous that joinder of all members is impracticable.

78.     While the exact number of Proposed Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are, at a minimum, tens or hundreds of Proposed Class members.

79.     Common questions of law and fact exist as to all Proposed Class members and predominate over any questions affecting solely individual members of the Proposed Class. Among the questions of law and fact common to the Proposed Class are:

> (a) whether Defendant breached its duties, including its duties of good faith and fair
>
> dealing, to Plaintiffs and other proposed Class members;

14

(b) whether Defendant failed to act prudently and solely in the interests of employees when making decisions about the disability petitions and insurance coverage;

(c) whether Defendant breached its duties to Plaintiffs and other proposed Class members by allowing the insurance coverage to lapse for Plaintiffs and the proposed Class members while the MTA was reviewing, and delaying, the disability petitions;

(d) whether Defendant breached its contract with Plaintiffs and the Class, and breached its duties of good faith and fair dealing by its conduct alleged in this Complaint; and

(e) whether Plaintiffs and the Proposed Class members have sustained damages and, if so, the proper measure of those damages.

80.     Plaintiffs' claims are typical of the claims of the other Proposed Class members because Plaintiffs and the other Proposed Class members each sustained damages arising out of Defendant's wrongful conduct as set forth in this Complaint.

81.     Plaintiffs will fairly and adequately protect the interests of the Proposed Class and have retained counsel competent and experienced in class action and litigation.

82.     Plaintiffs have no interests antagonistic to or in conflict with those of the Proposed Class.

83.     Class action status is warranted because prosecuting separate actions by the Proposed Class members would create a risk of adjudications with respect to individual Proposed Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

84.     Class action status is also warranted because: (i) prosecuting separate actions by the Proposed Class members would create a risk of establishing incompatible standards of conduct for Defendant; (ii) Defendant has acted or refused to act on grounds generally applicable to the Proposed Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Proposed Class as a whole; (iii) questions of law or fact common to Proposed Class members predominate over any questions affecting only individual members; and (iv) a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS

**Count I --Breach of fiduciary duty**

85.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

86.     Defendant was a fiduciary of the Plan and owed fiduciary duties to Plaintiffs and the Class.

87.     Defendant was bound by the duties of good faith, loyalty, and prudence.

88.     Defendant also was bound by a duty to make determinations and decisions in accordance with ERISA and the Plan documents, including the Plan's requirement that the Medical Board contain three physicians, including one appointed by or on behalf of the employees.

89.     Defendant breached its duties to Plaintiffs and the Class by taking so much time to process disability claims that the insurance coverage lapsed for Plaintiffs and the Class.

90.     Defendant also breached its duties to Plaintiffs and the Class by using a Medical Board that did not include the required physicians, including a physician selected by Plaintiffs or their Collective Bargaining Representatives.

91.     To the extent that the breaches were by the MTA's Medical Board or by the MTA's Board of Managers, Defendant is also liable as a co-fiduciary because the MTA knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to process the disability claims in a way that complied with the Plan's requirements and did not threaten the insurance coverage of Plaintiffs and the other Proposed Class members.

92.     Moreover, upon information and belief, Defendant MTA knew that the Medical Board was operating only with two physicians, violating the contractual and Plan provision requiring three physicians. During the Class Period, including in May 2017, ACRE notified Defendant that the Medical Board did not include an employee-appointed third physician, violating the Plan.

93.     As a consequence of Defendant's breaches of fiduciary duty, Plaintiff and the Class were damaged and suffered losses, including losing valuable insurance coverage for themselves and their families for years to come.

94.     Had Defendant discharged its duties, the losses suffered by Plaintiffs and the Class would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of duty alleged herein, Plaintiffs and the Class members lost their insurance coverage and incurred significant unreimbursed medical costs.

95.     Defendant is liable to restore the losses to Plaintiffs and the Class caused by Defendant's conduct, including restoring the insurance coverage for Plaintiffs, the Class

17

members, and their families from the day of lapse and providing other equitable relief as appropriate.

**Count II -- Breach of Contract**

96.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

97.    The contractual documents between Plaintiffs and the MTA, including the Plan document for the Defined Benefit Retirement Program for Represented Employees of the Commuter Rails, requires that the "'Medical Board' shall mean a three member board of physicians". Section 12.1.09. That contractual document also provides that one of the physician members of the board must be either the employee/applicant's physician or a physician selected by the employee/applicant's Collective Bargaining Representatives.

98.    Upon information and belief, this requirement for a third physician was intended to protect the employee/applicant, including Plaintiffs and the Class, as they applied for disability from MTA.

99.    Upon information and belief, at all relevant times, the Medical Board that reviewed Plaintiffs' disability applications failed to include the third physician appointed by Plaintiffs or their Collective Bargaining Representatives.

100.    During the relevant time period, ACRE, on behalf of Plaintiffs and other members of the Class, requested that the MTA include on the Medical Board a third physician selected by the applicant or by the applicant's Collective Bargaining Representatives but the MTA refused to do so.

101.    As a consequence of Defendant's breaches of contract, Plaintiff and the Class were damaged, including losing valuable insurance coverage for themselves and their families for years to come and incurring significant unreimbursed medical costs.

102.    Defendant is liable to restore the losses to Plaintiffs and the Class caused by Defendant's conduct, including restoring the insurance coverage for Plaintiffs, the Class members, and their families from the day of lapse, compensating Plaintiffs and the Class for their unreimbursed medical costs after the date of lapse, and providing other relief as appropriate.

**Count II -- Breach of Good Faith and Fair Dealing**

103.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

104.    A covenant of good faith and fair dealing is implied in every contract under New York law.

105.    Implied covenants are as effective components of an agreement as those covenants that are express.

106.    Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term.

107.    Defendant MTA utilized its discretion under the contract in bad faith to lapse insurance coverage for Plaintiffs and the Class members and their families.

108.    Defendant MTA also used its discretion under the contract in bad faith to review disability applications using a Medical Board that had only two physicians, not the required three physicians, in an effort to deny more disability claims, increase the review time, and avoid

paying retirement benefits, including insurance coverage for many years, to Plaintiffs, the MTA's employees, and other members of ACRE.

109.    Defendant MTA utilized its discretion under the contract in bad faith to deny reasonable requests to extend Plaintiffs' insurance coverage while the MTA reviewed Plaintiffs' disability petition.

110.    Defendant MTA utilized its discretion under the contract in bad faith to unduly extend the review period for Plaintiffs' disability petitions to the point that Plaintiffs' insurance coverage lapsed.

111.    Plaintiffs and the Class reasonably expected that the MTA would comply with the procedures for reviewing disability applications, including the requirement that the Medical Board would contain three physicians, with one being either the employee's physician or a physician appointed by the Bargaining Representatives for employees.

112.    Plaintiffs and the Class reasonably expected that the MTA would comply with reasonable requests for extending insurance given the MTA's lengthy delays reviewing Plaintiffs' disability applications.

113.    At all relevant times, the MTA concealed that it was not complying with the three-physician procedures for the Medical Board and for reviewing disability applications.

114.    The MTA lapsed Plaintiffs' insurance coverage, denied requests to extend the insurance coverage, and denied disability applications arbitrarily, capriciously, and inconsistently with the reasonable expectations of Plaintiffs and the Class.

115.    The MTA's unreasonable and unfair conduct violated the implied covenant of good faith and fair dealing.

116.    As a consequence of Defendant's breaches of the duties of good faith and fair dealing Plaintiffs and the Class have been damaged, including losing valuable insurance coverage for themselves and their families for years to come and having unreimbursed medical expenses.

117.    Defendant is liable to restore the losses to Plaintiffs and the Class caused by Defendant's conduct, including restoring the insurance coverage for Plaintiffs, the Class members, and their families from the day of lapse, paying for the unreimbursed medical expenses for Plaintiffs and the Class, and providing such other relief as is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.    Actual damages in the amount of any losses suffered by Plaintiffs and the Class;

B.    Injunctive and equitable relief, including an injunction preventing Defendant from terminating the insurance coverage for Plaintiffs and the Class while the MTA is considering their disability applications;

C.    Injunctive and equitable relief, including an injunction requiring Defendant to reinstate the insurance coverage for Plaintiffs and any class members whose insurance terminated while the MTA considered that Class member's disability petition;

D.    Injunctive and equitable relief, including an injunction requiring Defendant to reinstate the insurance coverage for any class members whose disability petition was denied based upon a review by a two-physician Medical Board, instead of by the required three-physician Medical Board, and keeping that insurance in place at least until a new review process is completed by the required three-physician Medical Board;

E.    An Order certifying the proposed Class; and

F.    Such other relief as the Court may deem just and proper.

Dated: December 21, 2017

SQUITIERI & FEARON, LLP

By: /s/Stephen J. Fearon, Jr.
    Stephen J. Fearon, Jr.
32 East 57th Street
12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553
Email: stephen@sfclasslaw.com